707 So.2d 1334 (1998)
Chrisanda MEREDITH, et al.
v.
ASBESTOS CORPORATION, LTD., et al.
Lillian Peltier PERQUE, et al.
v.
AVONDALE INDUSTRIES, INC. (formerly Avondale Shipyards, Inc. formerly Avondale Marine Ways, et al.).
Nos. 97-C-2593, 98-C-0211.
Court of Appeal of Louisiana, Fourth Circuit.
February 18, 1998.
S. Gene Fendler, Scott C. Seiler, Jill Losch, Mary S. Johnson, Nadia M. de la Houssaye, Liskow & Lewis, New Orleans, for Travelers Insurance Company, as an Alleged Insurer of Todd Shipyards Corporation and its Executive Officers, Todd Shipyards Corporation and Fidelity & Casualty Company.
Mickey P. Landry, Frank J. Swarr, LeBlanc, Maples & Waddell, New Orleans, for Plaintiffs.
Gerolyn P. Roussel, Perry J. Roussel, Jr., Roussel & Roussel, LaPlace, for Lillian Peltier Perque, Una Perque Driscoll and Dave Perque.
Before PLOTKIN, JONES and CIACCIO, JJ.
CIACCIO, Judge.
The primary issue in these consolidated applications for supervisory writs is whether LSA-R.S. 23:1032, the exclusive worker's compensation statute, bars a wrongful death cause of action brought by survivors of former employees of Todd Shipyard Corp. ("Todd"), who died of mesothelioma alleged to have been contracted as a result of their occupational exposure to asbestos while they were employed at Todd prior to the effective date of the statute, but who died after the effective date of the statute.

Facts and procedural history
In Meredith v. Asbestos Corporation, Ltd., writ number 97-C-2593, plaintiffs, survivors of Larry Meredith, who died on October 10, 1995, as a result of mesothelioma, filed both a survival action and a wrongful death action against Kaiser, Todd, Todd's executive officers, and Todd's insurers, Fidelity Casualty Company of New York, The Travelers Insurance Company, and Hanover Insurance Company, along with various alleged suppliers and distributors of asbestos containing materials. Mesothelioma is a fatal, signature disease, *1335 unquestionably caused by asbestos inhalation. The Meredith plaintiffs claimed that Meredith's death was caused by his occupational exposure to asbestos-containing substances between 1964 and 1972, while he was employed at Todd.
Todd's insurers and Kaiser filed a motion for summary judgment, claiming that both the survival and the wrongful death actions were barred. Todd's insurers and Kaiser claimed that the wrongful death action was barred under the Louisiana worker's compensation law effective at the time of Meredith's death in 1995. Moreover, Todd's insurers and Kaiser claimed that the survival action was barred, precluded, or extinguished by the dismissal of a suit filed by the decedent prior to his death in Jefferson Parish. The trial court denied the motion for summary judgment without assigning reasons for judgment; Kaiser and Todd's insurers sought this court's supervisory jurisdiction.
In Perque v. Avondale Shipyards, Inc., 98-C-0211, plaintiffs, survivors of Irving Perque, who died on January 15, 1992, also as a result of asbestos-related mesothelioma, filed both a survival action and a wrongful death action against a number of defendants, including Todd, and its insurer, the Fidelity and Casualty Company of New York, a/k/a Continental Insurance Company ("Fidelity"). The Perque plaintiffs claimed that Perque's death was caused by his occupational exposure to asbestos-containing substances during 1945 and 1947, while he was employed at Todd. Todd and Fidelity filed a motion for partial summary judgment claiming that the wrongful death action was barred under the worker's compensation law effective at the time of decedent's death in 1992. The trial court denied the motion for partial summary judgment, assigning extensive reasons for his judgment; Todd and Fidelity sought this court's supervisory jurisdiction.
Because the two applications for supervisory writs involve the identical question on the wrongful death issue, and because they both involve Todd, we granted the Meredith plaintiffs' motion to consolidate. The question concerning the survival action in the Meredith case will be considered separately.
Standard for deciding motion for summary judgment
Appellate courts must review summary judgments de novo, asking the same questions as do the trial courts: whether any genuine issues of material fact exist, and whether the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). In determining whether an issue is "genuine", courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Daniel v. Blaine Kern Artists, Inc., 96-1348 (La.App. 4th Cir. 9/11/96), 681 So.2d 19, writ denied, 96-2463 (La.12/6/96), 684 So.2d 934.

Wrongful death actions
Typically, summary judgments turn on the determination of whether the movant has met his burden of proving that no genuine issues of material fact exist. However, concerning the question in the wrongful death action which is common to both of these consolidated applications for supervisory writs, all parties agree that no genuine issues of material fact exist; in both cases, the decedents were employed by Todd prior to the effective date of LSA-R.S. 23:1032 of October 1, 1976, but died after that date Meredith in 1995 and Perque in 1992. Thus, the only question to be determined is whether the movantsin each case, the employer, executive officers of the employer, and/or insurers of the employer (hereinafter collectively referred to for convenience as "Todd")are entitled to judgment as a matter of law.
La. R.S. 23:1032(A)(1)(a), as amended by Acts, 1976, No. 147, § 1, limits employees and their beneficiaries to workers' compensation benefits for work-related injury, sickness or disease. Both employees and their beneficiaries are prohibited from suing employers, including executive officers, in tort, except for intentional acts. Prior to 1976, the immunity from suit in tort provided by La. R.S. 23:1032 did not extend to executive officers of an employer.
Citing this court's opinion in Holmes v. Pottharst, 438 So.2d 622 (La.App. 4th Cir. 1983), writ denied, 447 So.2d 1076 (La.1984), Todd argues that because a cause of action *1336 for wrongful death does not arise until the employee dies, and because the decedents-employees in the consolidated cases died well after the 1976 amendments, the plaintiffs are prohibited from bringing a wrongful death action against them. Holmes holds that the law applicable to a wrongful death action is the law in effect at the time of death.
On the other hand, the plaintiffs in both consolidated cases argue that, because their decedents were exposed to asbestos prior to the 1976 amendments, while working at Todd prior to 1976, and because the decedents contracted mesothelioma as a result of that pre-1976 exposure, they are not prohibited from bringing their wrongful death actions against Todd. In support of this argument, the plaintiffs cite the Louisiana Supreme Court's opinion in Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), which indicated that asbestos litigation should be considered sui generis, not subject to previously established rules. The plaintiffs claim that, despite the rule established by Holmes, Cole authorizes their wrongful death actions in the instant cases.
Unquestionably, this court directly addressed the issue presented by the instant consolidated writ applications in Holmes, 438 So.2d 622. In that case, the decedent died in February of 1990, allegedly as a result of silicosis contracted while working as a sandblaster from 1966 to 1970. Like asbestos-related lung disease, silicosis is commonly caused by occupational inhalation of a harmful irritant, silica dust. Holmes did not become aware of his occupational disease until March, 1978, when he was diagnosed. After Holmes's death, his wife and surviving children filed survival and wrongful death actions against several executive officers of the company which had employed Holmes as a sandblaster. One of the executive officers filed a motion for summary judgment, asserting that the survival action was prescribed and that the plaintiffs had no cause of action as to the wrongful death action.
In finding that the plaintiffs had no wrongful death cause of action against Holmes' employer's executive officers, this court rejected the plaintiffs' argument that the 1976 amendment to LSA-R.S. 23:1032, immunizing employers and executive officers against tort actions, should not apply when the tortious conduct occurred before the effective date of the 1976 amendment, which established that immunity. This court affirmed the trial court judgment granting the exception of no cause of action, noting that the wrongful death action "cannot arise until the victim dies and is intended to compensate the beneficiaries for damages they suffer from the moment of death and thereafter." 438 So.2d at 624. Quoting Guidry v. Theriot, 377 So.2d 319, 326 (La.1979), the court distinguished between survival and wrongful death actions as follows:
[A]lthough the wrongful death action arises from a common tort, it is a separate and distinct action from the survival action. It never existed or arose in favor of the victim.

Holmes, 438 So.2d at 624 (emphasis in original). Moreover, the court cited Smith v. Hurd, 408 So.2d 357 (La.App. 1st Cir.1981), which held that a wife had no wrongful death action against executive officers of her husband's former employer for the death of her husband, who died in 1977 as a result of silicosis caused by his constant exposure to silica dust while employed from 1969 through 1975.
The First Circuit Court has also dealt with this issue in a case involving a death caused by occupational inhalation of asbestos. In Owens v. Martin, 430 So.2d 1248 (La.App. 1st Cir.1983), aff'd, 449 So.2d 448 (La.1984), the court, following Smith, held that the 1976 amendments to LSA-R.S. 23:1032 barred a wrongful death action against executive officers based on the 1980 death of the plaintiffs' decedent, despite the fact that the decedent's occupational exposure occurred prior to the effective date of the amendment.
We find ourselves constrained by this court's previous holding in Holmes to reverse the trial court judgments denying the motions for summary judgment in these consolidated cases. Under the controlling jurisprudence in this court, a wrongful death action arises at the time of death and the law effective on that date must be applied to wrongful death actions. Under the law in effect on the date of the deaths of the two decedents in these consolidated applications for supervisory writs, Todd is entitled to *1337 judgment as a matter of law. The trial court judgment denying the motion for summary judgment in Meredith, 97-C-2593, as well as the trial court judgment denying the motion for partial summary judgment in Perque, 98-C-0211, is reversed. The motions for summary judgment are granted, and the wrongful death actions against Todd are hereby dismissed.

Survival action (97-C-2593)
The trial court in the Meredith case also denied Todd's motion for summary judgment in the survival action. Once again, the facts surrounding the controversy are not in dispute, the only question is whether Todd is entitled to judgment as a matter of law.
In order to resolve the issue presented by the survival action, we must recite additional facts leading up to the filing of the instant case. In November of 1994, prior to Meredith's death on October 10, 1995, Meredith filed an action for damages resulting from his contraction of mesothelioma against certain executive officers, employers, and various manufacturers and distributors of asbestos containing products, none of whom are parties to the instant case. In his tort action, Meredith alleged that he had contracted cancer as a result of his occupational exposure to asbestos-containing substances while he was employed at Avondale between 1964 and 1972. In the tort action, Meredith sought recovery of his own damages, including past, present, and future medical costs, lost wages, mental and physical pain and suffering, and loss of quality of life. All parties to the Jefferson litigation settled prior to or during trial; some of the dismissals were with prejudice, some were without prejudice. Each of the settlement documents contained a specific reservation of rights against other defendants.
Also prior to Meredith's death, on August 18, 1995, Meredith's wife, Chrisanda Meredith, filed a loss of consortium claim in the Civil District Court for Orleans Parish. Then, after Meredith's death, a final judgment of dismissal of Meredith's tort action in Jefferson Parish was issued on July 15, 1996. The next day, Chrisanda Meredith and one of Meredith's children filed a first supplemental and amending petition in the Orleans Parish action, asserting the wrongful death and survival actions which are the subject of this application for supervisory writs. In that petition, the defendants who filed this application for supervisory writs were named for the first time. In filing its motion for summary judgment concerning the survival action, Kaiser and Todd's insurers claim that the settlement of Meredith's tort action prior to his death precludes the instant survival action. The trial court denied that motion for summary judgment; Kaiser and Todd's insurers sought supervisory writs.
A survival action is intended to compensate a decedent's beneficiaries for injuries suffered by the decedent and continues the decedent's own cause of action beyond his death. Taylor v. Giddens, 618 So.2d 834 (La.1993). In support of their motion for summary judgment on the survival action, Kaiser and Todd's insurers claim that Meredith was fully compensated for his losses through the settlement of his own tort action with the defendants in the Jefferson Parish suit prior to his death. Kaiser and Todd's insurers claim that the survival action filed by the plaintiffs in the instant case is precluded by La. C.C.P. art. 425, relative to preclusion by judgment.
We find no merit to Todd's arguments on this issue. The defendants in the instant survival action were never named in Meredith's tort action, which never went to trial, but was settled through compromise agreements with the individual defendants named. Each of those settlement agreements reserved Meredith's rights to proceed against other defendants. La. C.C.P. art. 425 was never intended to apply to factual situations such as that presented by the instant case. Accordingly, we find no error in the trial court's denial of the motion for summary judgment filed by Kaiser and Todd's insurer on the survival action.

Conclusion
Accordingly, the consolidated applications for supervisory writs are granted. The trial court judgments denying the motions for summary judgment on the wrongful death actions are reversed; the motions for summary judgment are granted and the wrongful death actions are dismissed. The trial court judgment denying the motion for summary judgment on the survival action in 97-C-2593 *1338 is affirmed. The case is remanded for further proceedings consistent with this decision.
WRITS GRANTED; TRIAL COURT JUDGMENTS ON WRONGFUL DEATH ACTIONS REVERSED; MOTIONS FOR SUMMARY JUDGMENT ON WRONGFUL DEATH ACTIONS GRANTED; WRONGFUL DEATH ACTIONS DISMISSED; TRIAL COURT JUDGMENT ON SURVIVAL ACTION AFFIRMED; CASE REMANDED.
PLOTKIN and JONES, JJ., concur with written reasons.
PLOTKIN and JONES, Judges, concurring with written reasons.
We agree with the writer's conclusion that this panel is constrained by this court's holding in Holmes v. Pottharst, 438 So.2d 622 (La.App. 4th Cir.1983), writ denied, 447 So.2d 1076 (La.1984), as well as existing Louisiana Supreme Court jurisprudence,[1] to hold that the law applicable to a wrongful death cause of action is that in effect on the date of death; thus, we reluctantly concur. However, we write separately to express reasons why the strict Louisiana jurisprudence requiring application of the law effective on the date of death should be modified in wrongful death cases arising from deaths which result from latent lung disease caused by occupational inhalation of harmful irritants, such as asbestos. We suggest that the Louisiana Supreme Court should address this fundamental issue of law.
As noted by the writer's decision, the pre-1990 Louisiana appellate court jurisprudence on this issue has consistently disallowed wrongful death actions based on deaths caused by latent diseases resulting from occupational inhalation of harmful irritants. That fact is the basis of the writer's decision in these writ applications.
However, in 1992, the Louisiana Supreme Court's decision in Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), changed the rules in occupational disease cases based on injuries resulting from occupational inhalation of harmful irritants, specifically injuries caused by asbestos inhalation. In Cole, three former refinery workers filed suit in 1987 against a number of defendants, including executive officers of their former employer, claiming that the executives failed to provide the plaintiffs a safe workplace during their employment between 1945 and 1976. The primary issue decided by the court in Cole was whether the Louisiana Comparative Fault Law, enacted in 1979, applied retroactively to the case. Citing the "uniqueness" of asbestosis cases and pointing to the "lengthy temporal separation between the tortious conduct and the appearance of injury," the court held that the law in effect during the time of the plaintiffs' employmenti.e. contributory negligence and virile share principlesgoverned their 1987 actions, rather than the comparative fault principles established by the 1979 Louisiana Legislature. Cole, 599 So.2d at 1058. Because the injuries to the plaintiffs in Cole resulted from their exposure to asbestos more than thirty years prior to the date the suit was filed, the law in effect at the time of exposure applied, the court held. Id.
The jurisprudence which has followed Cole is also instructive on the issue presented by these consolidated writ applications. In Coates v. AC and S, Inc., 844 F.Supp. 1126 (E.D.La.1994), the United States District Court extended the holding in Cole to a wrongful death action, holding that pre-Louisiana Comparative Fault Act negligence law applied to a wrongful death action filed by the beneficiaries of a former insulator who died of mesothelioma contracted as a result of his long-term exposure to asbestos prior to the effective date of that act. The court stated specifically that "the trigger" for the determining the applicable law to a case arising out of a death allegedly caused by a latent lung disease resulting from occupational exposure to harmful irritants is the date of exposure to the injury-producing harm, "whether the case is a survival action or a wrongful death action." Id. at 1131.
The reasoning behind the Coates decision is explained as follows:
That the victim may eventually die as a result of long-term disease resulting from continuous pre-Act exposure is simply the beginning of the end point of prescription *1339 of the long-term damage/death claim. The date when the damage/injury was sustained is the wrong focus in determining the applicable law. The Louisiana Supreme Court in Cole focuses instead upon the wrongful or tortious conduct (i.e., when the significant, continuous exposure occurred) as the key factor in determining what law applies).
Id. at 1130. Coates also noted that Cole "specifically rejected `accrual' of the cause of action as the test of what law applies," and "adopted the `significant exposure' test to determine the law applicable to negligence causes of action in long-term latency disease cases." Id. at 1131.
Interestingly, this court issued a trio of cases in 1996, all of which have some bearing on the issue raised by these consolidated writ applications, despite the fact that none of them cite either Cole or Coates. In Gautreaux v. Rheem Manufacturing Co., 96-2193 (La.App. 4 Cir. 12/27/96), 694 So.2d 977, writ denied, 97-0222 (La.5/14/97), 690 So.2d 39, the court held in a wrongful death action that asbestos was not a listed substance under the 1975 amendments to LSA-R.S. 23:1031.1 when the decedent's asbestos-related disease was contracted, meaning that the decedent's disease was not covered by the exclusive remedy provision of the worker's compensation statute. See also Johnson v. Ashland Oil, Inc., 96-0323 (La.App. 1 Cir. 12/20/96), 684 So.2d 1156, writ denied, 97-0206 (La.3/14/97), 690 So.2d 37, which reached the same result.
Moreover, in Thomas v. Armstrong World Industries, 95-2222 (La.App. 4 Cir. 6/28/96), 676 So.2d 1185, writ denied, 96-1965 (La.10/1/96), 681 So.2d 1272, this court held that the version of the Worker's Compensation Act in effect at the time of a former employee's alleged work-related asbestos exposure governed the determination of whether a survival action was barred by the exclusive remedy provisions of the Act. Finally, in Held v. Avondale Industries, Inc., 95-1788 (La.App. 4 Cir. 4/3/96), 672 So.2d 1106, the court found a genuine issue of material fact precluding summary judgment in favor of the defendant shipbuilder in a case filed by the decedent and his wife prior to his death. When read together, the three cases clarify the fact that the pre-1976 workers' compensation provisions apply to these types of occupational disease cases, thereby granting a tort remedy to the plaintiffs.
More recently, three decisions rendered on the same day by three different panels of the Louisiana Fifth Circuit Court of Appeal considered the exact issue raised by the instant consolidated writ applications. In all three cases, the Fifth Circuit rejected the Coates' holding that Cole should be interpreted to allow wrongful death actions against employers or executive officers of employers for post-1976 deaths caused by long-term exposure to lung irritants, and disallowed wrongful death actions based on injuries caused by latent lung diseases resulting from occupational inhalation of harmful irritants. Walls v. American Optical Corp., 96-1000 (La.App. 5 Cir. 11/25/97), 703 So.2d 800 (exposure to silica dust from 1964 to 1970death in 1995 from silicosis); Gauthe v. Asbestos Corp. Ltd., 97-656 (La.App. 5 Cir. 11/25/97), 703 So.2d 763 (exposure to asbestos from 1942 to 1977death in 1996 from mesothelioma); Young v. E.D. Bullard Co., 97-657 (La.App. 5 Cir. 11/25/97), 703 So.2d 783 (exposure to silica dust from 1967 to 1980death in 1994 from silicosis). In rejecting the Cole argument, all three decisions cited this court's decision in Holmes, as well as the Louisiana Supreme Court's decision in Taylor.
Finally, the Louisiana First Circuit Court of Appeal, following Cole, held in Pitre v. GAF Corp., 97-1024 (La.App. 1 Cir. 12/29/97), 705 So.2d 1149, that pre-Products Liability Act law applied to a claim filed by the survivors of a decedent who allegedly died in 1992 from lung cancer reportedly caused by inhalation of asbestos particles, coupled with tobacco smoking, between 1942 and 1992. It is unclear from a reading of that decision whether a wrongful death action was involved in the Pitre case.
Both trial courts in the instant consolidated writ applications denied Todd's motion for summary judgment. Although the trial judge in Meredith failed to issue reasons for judgment, the trial judge in Perque issued extensive reasons. Finding Cole dispositive of the issue, the trial court found that "the damage occurred due to the fault of the alleged acts of Todd at a time when they could still be held liable for their acts." The court also found that, because mesothelioma *1340 was not covered by the Louisiana Workers' Compensation Law prior to 1976, the statute was no bar to plaintiffs' derivative wrongful death action. The court further found that application of LSA-R.S. 23:1032, as amended by Acts 1976, No. 147, § 1, "to evaluate conduct that occurred before its effective date" would be an improper retroactive application. Like the trial court in Perque, we believe the logic and holding of the Coates decision is correct. In the absence of controlling jurisprudence in this circuit, we would follow Coates, which correctly interprets Cole to apply to wrongful death causes of action.
Under Cole, which is the Louisiana Supreme Court's most recent pronouncement in a case involving injury caused by occupational inhalation of harmful irritants, the tort which caused the decedents' deaths in the consolidated writ applications occurred pre 1976. Cole tells us that the tort must be considered to have occurred on the date of exposure in cases involving latent lung diseases caused by occupational inhalation of harmful irritants.
One problem that is discussed by the trial court in Perque, which is not addressed in Coates, is the fact that applying two different sets of laws in survival and wrongful death cases involving latent injuries caused by occupational inhalation of lung irritants is nonsensical, dependent upon the date when each cause of action arose. Unquestionably, the plaintiffs in both of the consolidated writ applications are entitled to bring survival actions against Todd, under the pre-1976 law. The wrongful death action, like the survival action, is derivative of the decedent's own occupational injury. If the decedent dies as a result of the latent disease caused by occupational inhalation of harmful irritants, the decedent's beneficiaries unquestionably have a wrongful death cause of action. Damages in survival and wrongful death actions frequently overlap.
The administrative problems for trial courts and juries caused by bifurcation of the law between the two causes of action are enormous. The trial court's reasons for judgment in Perque include a table showing the different types of laws that would apply to the two causes of action. Besides the fact that the plaintiffs would have a cause of action against Todd for the survival action, but not the wrongful death action, several other legal problems would result. For example, the pre-Comparative Fault law, would apply to the survival action, while Comparative Fault law may apply to the wrongful death action. PreProducts Liability Law would apply to the survival action, while Products Liability Law may apply to the wrongful death action. The plaintiffs in the wrongful death action could continue to try to prove that the employer committed an intentional tort, and, in certain instances, may have a punitive damage claim.
Moreover, a conflict of law on contribution and indemnity claims would result between the survival and wrongful death actions. In the survival action, contribution and indemnity would be based on virile shares. However, in the wrongful death action, contribution and indemnity might be subject to either joint and solidary liability, or no solidary liability, depending on when the death occurs. Those problems alone will generate a multiplicity of legal errors.
Perhaps the most confusing and litigious problem would be suits against applicable insurance companies. For the survival actions, insurance policies would be "stacked," while a different rule may apply to wrongful death actions. Additionally, the insurer called upon to defend the two causes of action might be entirely different entities, depending on the insurer at the time of death. For these administrative reasons, as well as the other reasons we have stated, one common body of law should be applicable to all causes of action derived from latent diseases resulting from occupational inhalation of harmful irritants.
In the wrongful death claims involved in the consolidated writ applications, it is undisputed that, under the law as it exists at this time in Louisiana, both the cause of actions and right of action are considered to have arisen at the time of the deaths. However, the rule that a wrongful death action arises at the time of death was originally established for prescriptive purposes, to protect the beneficiaries' cause of action. Perhaps the answer to this problem could be solved if the right of action and the cause of action were more clearly distinguished in these types of cases. The right of action unquestionably *1341 arises at the time the decedent dies; only after that date can the beneficiaries file a wrongful death action. However, we would submit that the cause of action underlying the wrongful death claim should be considered to have arisen contemporaneously with the cause of action in tort which underlies the wrongful death claim. Since the wrongful death claim is derivative of the tort action, in the same way as the survival action is derivative of the tort action, all three causes of action should be considered to have arisen at the same time for the purpose of determining the applicable law. The fact that the right of action arises for prescriptive purposes on the date of death should not necessarily dictate the law applicable to the case.
The damages suffered by the plaintiffs in the instant consolidated writ applications were unquestionably caused by torts committed by Todd at a time when tort actions were allowed against employers. The plaintiffs should be allowed, under the reasoning expressed by the Louisiana Supreme Court in Cole, to bring a wrongful death action against Todd. The plaintiffs should not be barred from pursuing their cause of action against the tortfeasor simply because the disease contracted by their decedents did not manifest itself for many years. The analysis developed in Cole should be extended to the wrongful death actions in these consolidated writ applications.
NOTES
[1] See Taylor v. Giddens, 618 So.2d 834 (La.1993) and Guidry v. Theriot, 377 So.2d 319 (La. 1979).